UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rickey P. V., | Case No. 20-CV-2199 (JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi,<br>Social Security Commissioner, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rickey P. V. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). Plaintiff contends he is disabled by conversion disorder, hemiplegic migraines (migraines accompanied by weakness on one side of the body), seizures, and strokes. Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 48) and Defendant's Motion for Summary Judgment (Dkt. No. 51).

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration ("SSA") on four grounds, including that the Administrative Law Judge ("ALJ") erred in determining that: (1) Plaintiff's conversion disorder was not severe enough to be disabling or to meet the criteria for Listing 12.07 (pertaining to somatic symptoms and related disorders) in the Listing of Impairments;[1] (2) the medical opinion of

---

[1] The SSA's Listing of Impairments describes impairments to major body systems considered severe enough to prevent an individual from doing any gainful activity. Most impairments listed are permanent, but regardless, there is a durational requirement that the impairment must have lasted, or be expected to last, for at least a 12-month continuous

1

Plaintiff's treating psychiatrist, Dr. Michael Ekern, M.D., did not merit controlling weight; (3) Plaintiff's Residual Functional Capacity ("RFC")[2] did not require additional limitations to accommodate his conversion disorder; and (4) Plaintiff knowingly decided to proceed without legal counsel at his hearing. (Pl.'s Mem. Supp. at 8, 20, Dkt. No. 48.) For the reasons set forth below, the Court denies Plaintiff's Motion, grants the Commissioner's Motion, and affirms the decision of the Commissioner.

I.   **BACKGROUND**

Plaintiff applied for DIB on July 2, 2015, alleging disability beginning on February 28, 2015. (Soc. Sec. Admin. R. (hereinafter "R.") 100, 181–82.)[3] His alleged impairments include conversion disorder, hemiplegic migraines, seizures, and strokes. (R. 200.)

A.   **Relevant Medical Evidence**

The most relevant medical evidence is from the period between the date of the alleged onset of disability (February 28, 2015) through the date of the ALJ's decision (December 27, 2018). The Court therefore focuses on evidence within that general timeframe. In addition, the Court does not summarize all of the medical evidence in the record, but only the evidence pertaining to the issues raised for judicial review.

---

period. Establishing that a claimant has a listed impairment is often a necessary but not sufficient step to establishing that a claimant is disabled.

[2] A person's residual functional capacity "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

[3] The Social Security administrative record is filed at Dkt. Nos. 26 through 26-8. The record is consecutively paginated, and the Court cites to that pagination rather than the docket number and page.

Between June 2014 and April 2015, various providers, including Dr. Barbara Roth, M.D., saw Plaintiff at Park Nicollet/Methodist Hospital for headache-related concerns. Dr. Roth diagnosed Plaintiff with a headache disorder. (R. 296–62.) Imaging and neurological examinations performed showed no abnormalities were present, and Plaintiff received a referral to physical therapy, psychotherapy, and psychiatry. (*Id.*)

In 2015, Plaintiff saw licensed social worker Tanya Kern, LICSW, for psychotherapy related to his conversion disorder. (R. 421–22.) Ms. Kern documented that Plaintiff was attempting to gain custody of his children, which caused him stress, and recommended continued counseling to learn stress-management techniques. (R. 429–30.)

In spring of 2016, Plaintiff saw Dr. Alford Karayusuf, M.D., for a consultative examination. (R. 385–87.) Dr. Karayusuf observed multiple seizures, noting that Plaintiff was "fully conscious during these episodes and was able to communicate with [him] while having these episodes." (R. 385.) Dr. Karayusuf documented that Plaintiff stated that he was not taking his medications. (*Id.*) On examination, Dr. Karayusuf found Plaintiff had generally normal mental status, with normal memory and affect, but recommended that Plaintiff be limited to work away from the public because of his anxiety about people watching him have a seizure. (R. 386–87.)

During the fall and winter of 2016, Plaintiff saw his treating psychiatrist, Dr. Michael Ekern, M.D. (R. 431–37.) Dr. Ekern documented inconsistent symptoms of unusual gait, facial drooping, and slurred speech, but found that Plaintiff's memory, coherence, and attention were normal. (R. 433.) Dr. Ekern recommended psychotherapy, prescribed a medication called Cymbalta used for depression and anxiety, and emphasized

3

life problem solving and stress management skill building. (*Id.*) In the spring and summer of 2017, Dr. Ekern prescribed Gabapentin (an anticonvulsant) and BuSpar (an antianxiety medication) and noted that Plaintiff stated that his conversion disorder symptoms had improved since starting therapy, but that he was not always taking some of his prescribed medications. (R. 454–55, 473, 489.) By June 2018, Dr. Ekern documented that when Plaintiff took his medications, they helped with calmness, and that the resolution of his child custody concerns had also reduced his overall anxiety. (R. 513.)

During 2017 and 2018, Plaintiff saw licensed social worker Stephanie Cartwright-Karlsson, LICSW, for counseling, during which Ms. Cartwright-Karlsson observed poor mood, facial drooping, and stuttering. (R. 437–53, 470–72, 519.) Ms. Cartwright-Karlsson recommended that Plaintiff participate in ongoing therapy to better understand his emotions and learn relaxation skills. (R. 440.) Throughout these therapy visits, Ms. Cartwright-Karlsson documented that Plaintiff's activities included donating plasma, teaching his kids to ride their bikes, and participating in a car show. (R. 494, 508, 511, 515.)

      **B.**     **Administrative Proceedings**

Plaintiff's DIB application was denied on initial review and reconsideration. (R. 117–21, 124–26.) At Plaintiff's request, an ALJ held a hearing on July 26, 2018. (R. 14–70.) At the hearing, Plaintiff stated that he wished to proceed without representation. He also testified that his mother had helped him to submit his brief. (R. 19–20, 23.)

Regarding past work, Plaintiff testified that he last worked in 2015 as a driver's assistant delivering beer, and before that had worked as an order packer at several companies, and as an assistant manager of an automotive parts store. (R. 40–44.)

Regarding daily activities, Plaintiff testified that he regularly drove his brother to and from work, cared for his children, watched television, and ran errands. (R. 36.) Plaintiff claimed that his mother had lived with him for the past seven years and had helped with tasks that Plaintiff could not perform. (R. 45–46.) He also testified that his family had been paying for his monthly rent. (R. 46.)

Regarding his health conditions, the ALJ pointed out that Plaintiff's submitted medical records were sparse, and Plaintiff admitted he might have forgotten to submit some treatment records. (R. 22–23, 25.) Plaintiff testified that he had undergone neurological testing in 2015 because of increasing seizure-like episodes, and the tests showed that his symptoms were "emotional and not neurological." (R. 27–29.) Plaintiff claimed that, since then, he had regularly seen his treating psychiatrist, Dr. Ekern, and his counselor, Ms. Cartwright-Karlsson. (R. 22, 25–27.) Plaintiff testified these providers had helped him learn to better manage his symptoms. (R. 30.) Plaintiff testified that when he has seizures, his jaw drops, his speech becomes slurred, and his eyes go back into his head for varying lengths of time. (R. 36.) When he feels a seizure coming, Plaintiff claimed that he can sense it and stop what he is doing, and he identified fatigue and anxiety as triggers that tend to increase his seizures. (R. 39.) Plaintiff stated his physicians recommend he no longer drive. (R. 40.) He also testified that sometimes he has difficulty with lights, screen brightness, extreme temperatures and sounds, being startled by people, and a limp and muscle

5

twitching on his left side. (R. 47–51.) According to Plaintiff, most days he suffers smaller facial seizures and weakness, but there are some days where he has significant seizures all day. (R. 51–52.) Plaintiff claimed that, since starting on medications in 2015, he is better able to manage his symptoms and is less symptomatic. (R. 52.) He also testified that three of the five days in the week before his hearing were "bad days." (R. 52–53.)

Vocational expert Steven Bosch testified at the hearing regarding Plaintiff's ability to perform his past work. Mr. Bosch first gave an overview of Plaintiff's past work as an auto parts clerk, material handler, and driver helper. (R. 59.) When asked whether a hypothetical person of Plaintiff's age, education, and work experience who was limited to avoiding heights, use of machinery, or fast-paced production could perform Plaintiff's past work, Mr. Bosch stated no, but noted such a person could perform other jobs including, but not limited to, hand packaging, bench assembly, or electronics work. (R. 60.) When asked if that same individual could still perform such jobs if limited to moderate level noise environments without flashing lights and only occasional interaction with coworkers and none with the public, Mr. Bosch stated that two of those roles would still be available to such a person, as would other remaining viable jobs such as molding machine tender. (R. 61–62.) Next, when asked if such an individual could perform those roles if they were limited in their handling and fingering abilities on their left upper extremity, Mr. Bosch testified all three jobs would still be possible. (R. 62.) Likewise, if such an individual was hypothetically limited to sedentary jobs only, Mr. Bosch stated that there would still be employment available for them as a semiconductor bonder, optical assembler, or optical

lens inserter. (R. 63–64.) For such roles, Mr. Bosch testified that an individual could not be absent more than twice per month or off-task more than 10% of the time. (R. 64.)

The ALJ issued a written decision on December 27, 2018, determining that Plaintiff was not disabled. (R. 97–116.)[4] Plaintiff requested that the SSA's Appeals Council ("AC") review the ALJ's decision, and on March 9, 2020, the AC notified Plaintiff that they had reviewed the ALJ's decision and had found an error of law; some evidence had not been included in the record as required by 20 C.F.R. § 404.1513. (R. 176.) To rectify this, the AC planned to issue a corrective decision that would still reach the same outcome, but would include and analyze the missing additional evidence, namely a letter from Dr. Ekern dated August 1, 2018. (R. 177–78.) In the interim, the AC permitted Plaintiff to submit an additional statement or evidence to the AC, but Plaintiff did not do so. (R. 4, 179.)

On August 15, 2020, the AC issued their decision which affirmed and adopted the ALJ's analysis and decision that Plaintiff was not disabled. (R. 1–9.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a), the AC first determined that Plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of his disability. (R. 7; *compare* R. 103.) At step two, the AC found that Plaintiff had one severe impairment: conversion disorder. (*Id.*) At step three, the AC concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[4] The Court will not discuss the ALJ's decision at length unless it is necessary to explain portions of the Appeals Council's decision because the Appeals Council's decision superseded the ALJ's decision and is the controlling decision of the Commissioner for the purposes of judicial review. *See* 20 C.F.R. §§ 404.987–88.

Before proceeding to step four, the AC assessed Plaintiff's RFC. Relevant to the issues raised on judicial review, the ALJ considered Plaintiff's subjective report of his symptoms as well as his submitted medical records, finding that Plaintiff needs accommodations to avoid light-related stimulation of headaches and to reduce stressors and social interactions. (R. 105–08.) However, the AC found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. (R. 7; *compare* R. 105.) The AC adopted the ALJ's findings that "[c]are is entirely conservative with medications and counseling[;]" symptoms have not worsened in "intensity, frequency, or [their] debilitating nature[;]" Plaintiff has declined to follow suggested courses of stress management treatment; Plaintiff reported inconsistent frequencies of symptoms across providers in the record; and Plaintiff's activities did not demonstrate that he was as limited as claimed. (R. 6–7, 109–11.)

The AC also analyzed the medical opinion evidence and adopted the ALJ's weighting of those decisions (which the Court will detail below, where relevant), with one small addition.[5] (R. 5–6.) How the Commissioner considers medical opinions in SSA cases has changed since Plaintiff filed his DIB application. Here, Plaintiff filed his application for DIB before March 27, 2017, which means that 20 C.F.R. § 404.1527 (not the newer,

---

[5] The only substantive change that the AC made in their review was to include a "letter dated August 1, 2018, from treating psychiatrist Michael D. Ekern, M.D.[,]" which the ALJ had received before issuing her decision but had not included in the record. (R. 5.) Dr. Ekern's letter stated that he has treated Plaintiff since October 2016 for conversion disorder; that psychotherapy is the primary treatment; that medications have had little effect; and that, in his opinion, Plaintiff cannot work. (*Id.*)

8

post-March 27, 2017 standards set forth in 20 C.F.R. § 404.1520c) governed the ALJ's evaluation of Plaintiff's providers' opinions. Under § 404.1527, ALJs generally give "more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." § 404.1527(c)(1). More weight is also given to opinions from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from . . . consultative examinations . . . ." § 404.1527(c)(2).

Under this standard, the ALJ gave some weight to the opinion of Dr. Karayusuf, who recommended limited interactions with people during Plaintiff's workday to minimize his anxiety, but opined that Plaintiff could perform simple tasks at a reasonable pace. (R. 108, 384–87.) The ALJ also gave partial weight to the SSA consultants' opinion that Plaintiff required limited social interaction and work complexity. (R. 110.) However, the ALJ gave little weight to Dr. Ekern's opinion, even though he was the treating psychiatrist, because it "lack[ed] a function-by-function data driven correlation between objective findings and specific limitations[,]" and contained internal inconsistencies "with respect to the social restrictions" and Plaintiff's "reported daily activities." (R. 110.) The ALJ also noted that Plaintiff appeared to have completed the medical statement form given to Dr. Ekern to complete for his provider opinion. (*Id.*) In addition to adopting the ALJ's findings, the AC also found the additional evidence of Dr. Ekern's August 1, 2018 letter consistent with Dr. Ekern's other submitted treatment records—records that the ALJ had before her

9

in reaching her decision—and thus affirmed the ALJ's findings and decision and gave only some weight to Dr. Ekern's opinion in crafting Plaintiff's RFC. (R. 6.)

Based on the record, the AC adopted the ALJ's finding that Plaintiff had the RFC

> [t]o perform sedentary work as defined in 20 CFR 404.1567(a) except: occasionally crawl, crouch, kneel, stoop, balance, and climb ramps or stairs; must avoid work at unprotected heights or use of moving machinery; must avoid climbing ladders, ropes, or scaffolds; must avoid work involving more than occasional exposure to extreme heat or cold and limited to moderate noise work environments; must avoid work involving exposure to flashing lights; able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes with only occasional interaction with coworkers and no interaction with the public.

(R. 6, 104–05.) After crafting this RFC, the AC next determined that Plaintiff could not perform his past work. (R. 6.) However, the AC found that, based on Plaintiff's age, education level, past relevant work, and RFC, "there [were] a significant number of jobs in the national economy which he could perform[.]" (*Id.*) Consequently, at step five, the AC found that Plaintiff was not disabled. (R. 7.) This constituted "the final decision of the Commissioner of Social Security" for the purposes of judicial review. (R. 1.)

### C. Judicial Review

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. (Pl.'s Mem. Supp. at 28.) Plaintiff argues that the AC erred in determining that: (1) Plaintiff's conversion disorder was not severe enough to be disabling or to meet the criteria for Listing 12.07 pertaining to somatic symptoms and related disorders; (2) the medical opinion of Plaintiff's treating psychiatrist, Dr. Ekern, did not merit controlling weight; (3) Plaintiff's RFC did not require additional limitations to

accommodate his conversion disorder; and (4) Plaintiff knowingly decided to proceed without legal counsel at his hearing. (Pl.'s Mem. Supp. at 8, 20.) The Commissioner opposes Plaintiff's Motion and asks that the final decision be affirmed. (Def.'s Mem. Supp. at 1–2, 22, Dkt. No. 52.)

## II.     STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the Commissioner's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the Commissioner's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish

11

that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## II. DISCUSSION

### A. The Commissioner's Findings at Step Three About the Severity of Plaintiff's Impairments

Plaintiff first argues that the Commissioner erred in evaluating the severity of his conversion disorder, claiming that the Commissioner should have found that he met the criteria for Listing 12.07 (somatic symptom and related disorders), as she would have if she had given controlling weight to the opinion of his treating psychiatrist, Dr. Ekern. (Pl.'s Mem. Supp. at 8, 11–16.)

Plaintiff bears the burden of demonstrating that objective medical evidence shows that his conversion disorder is a medically determinable impairment that "result[s] from [an] anatomical, physiological, or psychological abnormalit[y]" and that it "interferes with [the Plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1508 (2015), 404.1520a (2011). Plaintiff must also show that this abnormality impacted his ability to perform basic activities such as walking, sitting, and reaching. Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985).

Here, Plaintiff argues that, because the ALJ did not have a complete record before her, she reached a decision on insufficient evidence because she failed to understand the complexity of Plaintiff's conversion disorder. (Pl.'s Mem. Supp. at 8.) For example, Plaintiff points to the ALJ's finding of a mild limitation in understanding, remembering, and applying information, and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace, and notes that he disclosed severe difficulties in these areas on his Function Report. (*Id.* at 11–13.)

However, the AC and ALJ considered Plaintiff's subjective evidence, but found the record contained conflicting accounts of Plaintiff's activities and how medical professionals assessed his functionality in these areas. (R. 103–04.) In general, the ALJ found that Plaintiff's course of treatment has been entirely conservative—involving medication and counseling—and that his symptoms have not worsened over time. (R. 109.) As to medication and counseling, the ALJ noted that the record contained significant gaps in how consistently Plaintiff pursued recommended treatments, and that when he did comply with these recommendations, he reported improvements to his symptoms. (R. 109, 407–24.) The ALJ also noted the inconsistencies in the record, including that Plaintiff's reports to providers about the frequency of his seizures were varied. (R. 109, 240, 258, 386.) The ALJ found that Plaintiff's activities—including driving for his family members, repairing cars, watching television, socializing, caring for his children, preparing meals, and shopping—all suggested that his symptoms were not as severe as alleged. (R. 110.) Moreover, the ALJ noted that Plaintiff's periods of employment and unemployment did not align with his claims of when his symptoms worsened. (R. 110–11, 243, 287.) Where

a plaintiff complains, subjectively, of symptoms, but those complaints are undercut by the plaintiff engaging in activities a person suffering from such complaints typically would not take part in, or where a plaintiff makes contradictory statements to treatment providers, the Commissioner may give such subjective complaints little weight. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001); *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999). Thus, the Court finds no error in the Commissioner's analysis that the record was complete but failed to support Plaintiff's subjective claims.

Relatedly, Plaintiff also contends that the Commissioner erred in evaluating whether his impairments met the criteria contained in Listing 12.07 (somatic symptom and related disorders) under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s Mem. Supp. at 16–17.) A plaintiff bears the burden of proving that their impairment met or equaled a listing's specific medical criteria. 20 C.F.R. § 404.1512(a) (2015); *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Here, there is substantial evidence in the record supporting the ALJ's conclusions—adopted by the AC—regarding Plaintiff's conversion disorder. The AC and ALJ considered whether Plaintiff met the criteria of Listing 12.07 and found some criteria went unmet according to the record, including that Plaintiff did not have at least one extreme or two marked limitations in areas of mental functioning, but instead had only mild or moderate limitations. (R. 103.) Plaintiff relies on his Function Report to argue that the record contained evidence that Plaintiff's mental impairments were more severe than the ALJ found (Pl.'s Mem. Supp. at 11–13), but the Commissioner found—as she is permitted to do—that Plaintiff's subjective reports about his symptoms were not consistently supported by the entire record, *see Gray*, 192 F.3d at 804. Judicial review does

14

not give this Court the right to reweigh the evidence and reach its own conclusion; it must ask whether substantial evidence in the record supports the conclusion that the Commissioner reached. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154–56 (2019). Here, substantial evidence supports the Commissioner's finding that Plaintiff did not meet the criteria for Listing 12.07.

Plaintiff also argues that the ALJ failed to give controlling weight to Plaintiff's treating psychiatrist, Dr. Ekern. (Pl.'s Mem. Supp. at 8.) The ALJ discussed Dr. Ekern's medical opinion that Plaintiff had "marked limitations in understanding and memory[,]" "marked to extreme limitation[s] in sustained concentration and persistence[,]" and "marked to extreme difficulty in adaptive ability and social functioning[.]" ( R. 110.) The Court reads Plaintiff's argument to be that, had Dr. Ekern's opinion been given controlling weight, the Commissioner would have found Plaintiff's conversion disorder met the criteria for Listing 12.07. (Pl.'s Mem. Supp. at 14.)

"'A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). However, the Commissioner may decline to give a physician's opinion controlling weight if the ALJ gives a reasoned explanation why. *See Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001); 20 C.F.R. § 404.1527(d)(2). Acceptable reasons include where a treating physician's opinions are not sufficiently supported by the objective medical findings, *see* 20 C.F.R. §

15

404.1527(c)(3), are inconsistent, *see Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001), are conclusory, *see Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996), or rely on a plaintiff's subjective complaints, *see Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

Here, the ALJ found Dr. Ekern's opinion was not sufficiently tied to objective medical findings and suffered from internal contradictions, as well as that the medical statement form that Dr. Ekern submitted appeared to have been completed, at least in part, by Plaintiff—which Plaintiff confirmed during the July hearing. (R. 24–25, 110, 388.) Plaintiff claims the ALJ should have sought clarification from Dr. Ekern rather than discounting the weight of his opinion. (Pl.'s Mem. Supp. at 28.) However, the ALJ did not find that the record was insufficient; she concluded the record was sufficient to determine that Dr. Ekern's opinion should be given little weight in formulating Plaintiff's RFC. When an ALJ declines to afford controlling weight to a physician's opinion and gives their reasons why, there is no requirement that they request more information from that physician. *See* 20 C.F.R. § 404.1520b(b)(2)(i) (2012); *see also Wagner v. Barnhart*, 05-CV-2069 (LRR), 2007 WL 2682278, at *6 (N.D. Iowa Aug. 1, 2007), *aff'd sub nom. Wagner v. Astrue*, 499 F.3d 842 (8th Cir. 2007). Therefore, the Court finds no error in the Commissioner's decision not to give Dr. Ekern's opinion controlling weight.

In sum, the Court finds that the Commissioner did not err either in determining that Plaintiff's conversion disorder did not meet the criteria for Listing 12.07, or in declining to give Plaintiff's treating psychiatrist's opinion controlling weight. Plaintiff may disagree with the Commissioner's conclusions, but where the Court finds substantial evidence supporting them, the Court may not. *See Biestek*, 139 S. Ct. at 1154–56; *Prosch*, 201 F.3d

at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings at step three of her evaluation process.

### B. The Commissioner's Findings Between Steps Three and Four About Plaintiff's RFC

Plaintiff also argues that the ALJ failed to properly consider and incorporate additional limitations into Plaintiff's RFC to account for his conversion disorder symptoms. (Pl.'s Mem. Supp. at 18–20, 23–27.) Specifically, Plaintiff claims that the Commissioner failed to sufficiently consider that conversion disorder is complex in both its symptoms and treatment; failed to incorporate Dr. Ekern's opinions into the RFC; failed to account for conversion disorder's impact on Plaintiff's work history; and did not adequately account for Plaintiff's likely absences from future work, or for likely unscheduled off-task time due to seizures.(R. 20–27.)

When assessing a plaintiff's RFC, the Commissioner must consider all relevant evidence in the record. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). However, a plaintiff still bears the burden of proving their RFC. *See, e.g., Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Plaintiff has not pointed to evidence in the record that the AC and ALJ left unconsidered in their analyses. The AC and ALJ considered evidence regarding Plaintiff's conversion disorder symptoms, which the Court has recounted above in Section I and will not repeat in full again here. In brief, the AC and ALJ found that the record supported some RFC limitations to accommodate evidence of Plaintiff's intermittent involuntary movements, fatigue, memory and concentration disturbance, social anxiety, and stammering, but did not find

that the record supported further limitations to accommodate Plaintiff's alleged conversion disorder symptoms—including seizures—because of the lack of objective medical evidence demonstrating the severity and frequency of symptoms that Plaintiff alleged, his prescribed conservative course of treatment of medications and counseling, and his lack of worsening symptoms. (R. 108–09.) As a result, the AC and ALJ limited Plaintiff to sedentary work with postural and environmental limitations, as well as reduced the complexity, pace, and social interaction requirements to avoid triggering stress for Plaintiff and thereby worsening his symptoms. (*Id.*) These limitations resulted directly from the AC and ALJ's consideration of the evidence concerning Plaintiff's conversion disorder symptoms, and while Plaintiff may wish that his RFC accommodated his disorder differently or that the AC and ALJ had given Dr. Ekern's opinion about his disorder greater weight, the record shows that the AC and ALJ provided reasons grounded in some medical evidence for their delineation of Plaintiff's RFC. *See Buford*, 824 F.3d at 796 (citing *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)).

On this record, the Court cannot find that the Commissioner erred when she determined Plaintiff's RFC because, where the Court finds substantial evidence supporting those determinations, the Court defers to the Commissioner's decision. *See Biestek*, 139 S. Ct. at 1154–56; *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings between steps three and four of her evaluation process in determining Plaintiff's RFC.

### C.     Plaintiff's Knowing Decision to Proceed Without Representation

Plaintiff's final argument is that the ALJ erred in failing to recognize that Plaintiff's conversion disorder symptoms, including "speech problems, unresponsiveness, and memory problems," rendered him unfit to proceed in the July 2018 hearing. (R. 8.) Plaintiff claims that, although the ALJ asked Plaintiff several times if he wanted to be represented by counsel, and although Plaintiff repeatedly said no, "the ALJ could have decided to allow for a continuance" when he saw that Plaintiff "was having symptoms from Conversion Disorder." (*Id.*) The Court understands Plaintiff's argument to be that the ALJ erred in failing to determine that Plaintiff should have been represented by counsel at the hearing.

Social security claimants do not have a constitutional right to counsel, although they may be represented by a lawyer if they so choose. 42 U.S.C. § 406, 1383(d)(2)(D); *Hungerford v. Colvin*, No. 14-CV-0613 (DSD/HB), 2014 WL 7272669, at *12 (D. Minn. Dec. 18, 2014). To determine if a plaintiff has knowingly decided to proceed without counsel, "the Eighth Circuit considers any written notices from the SSA explaining the claimant's right to counsel and the claimant's replies." *Id.* (citing *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990)). Courts in this District also "consider whether the claimant is aware at the hearing of [their] right to an attorney." *Id.* (citing *Stroud v. Barnhart*, No. 4-CV-35 (PAM/JGL), 2005 WL 679074, at *2 (D. Minn. Mar. 22, 2005) (finding a plaintiff knowingly decided not to be represented by counsel because she received several written notices about her right to counsel and acknowledged them verbally at the hearing before the ALJ, but still wished to proceed *pro se*); *Filipi v. Shalala*, No. 3:93-CV-785 (RHK/FEB), 1994 WL 706692, at *3 (D. Minn. Sept. 30, 1994) (same)).

19

Here, Plaintiff received repeated, written notice from the SSA that he could choose to be represented by counsel (R. 130–38, 145–53), provided an executed, written document stating that he wished to proceed *pro se* on the day of the July hearing (R. 163), and received the ALJ's verbal notice at the hearing that the hearing could be continued if Plaintiff wished to seek representation—which Plaintiff verbally declined (R. 18–20). This is sufficient to find that Plaintiff knowingly decided to proceed without counsel at the hearing and that the ALJ did not err in ordering a continuance of the hearing. *See Wingert*, 894 F.2d at 298. Therefore, Plaintiff's last argument also fails to demonstrate that the Commissioner erred in reaching her final decision.

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 48) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 51) is **GRANTED**; and

3. The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: August 9, 2022

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge